UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES COBBS,

      Plaintiff,

v.                                                            Case No. 04-72136

SCHWING AMERICA INC.,                          Honorable Patrick J. Duggan
a Minnesota corporation,

      Defendant.

_____/


## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 13, 2006.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

On June 8, 2004, Plaintiff James Cobbs filed a products liability action against

Defendant Schwing America in this Court based upon diversity jurisdiction.  Plaintiff's

Complaint alleges that Defendant negligently designed a grout pump, Model KSP-12V

("grout pump"), which injured Plaintiff.  Presently before the Court are the following

motions, filed on December 14, 2005: (1) Defendant's Motion for Summary Judgment on

Plaintiff's Design Defect Claim; (2) Defendant's Motion for Summary Judgment that

Plaintiff is Unable to Establish Proximate Cause; (3) Defendant's Motion for Summary

Judgment Regarding Misuse; (4) Defendant's Motion to Exclude Plaintiff's Expert Harold

Josephs; and (5) Defendant's Motion in Limine Pursuant to MICH. COMP. LAWS ANN. §
600.2946.  The Court held a hearing on these motions on February 2, 2006.

## I.   Factual Background

On September 24, 2001, Plaintiff began working for Traylor Brothers as a laborer.
Plaintiff was assigned to perform work on a tunneling project under the Detroit River.

Traylor Brothers used a tunnel boring machine, trailed by two of Defendant's grout
pumps to construct the tunnel.  According to Robert Edwards, Defendant's Product Safety
Manager, a grout pump sucks material in through two suction poppets, the suction poppets
close, and then two pressure poppets pumps the material out of the machine.  (Edwards Dep.
at 62-63).  Specifically, grout material which is stored in a hopper or other type of grout car
is connected by a hose to the inlet of the poppet valve and pulled into the machine by the
suction valves moving in alternate directions.  The moving hydraulic pistons then push the
material through the pressure valve cylinder out the end of the grout pump which is
connected to hoses directing where the grout is to be placed.  (*Id.* at 62-64).  To clean the
pumps, Traylor Brothers employees would detach the hose from the inlet cover and spray the
machines out with a water from a hose.  (Roumph Dep. at 21-22).  Employees generally left
the machines running while they cleaned them out.  (*Id.* at 26-29, 37).  In addition, the poppet
valve housing would have to be left open and operating during cleaning to dislodge any
material that was stuck in the poppet valve area.  (Katka Dep. at 40).

According to Plaintiff, on May 23, 2002, his supervisor, Niall Healy, told him to clean
one of the grout pumps.  (Cobbs Dep. at 67).  Plaintiff had never operated a grout pump.  (*Id.*
at 37-38, 45, 57).  On prior occasions, while another employee cleaned the pump, Plaintiff

2

had shoveled the grout that was cleaned from the machine into buckets. (*Id.* at 45). However, Plaintiff had never cleaned a grout pump himself. (*Id.*).

When Plaintiff walked over to the pump it was operating and grout was falling to the ground. (*Id.* at 70-71). Plaintiff contends that he closed one of the two poppet covers, which he described as the one that "closed like a book." (*Id.* at 74, 81). The hose was detached from the pump. (*Id.* at 70-71, 75). Plaintiff began searching the machine to find a "safety valve" or some way to shut it off. (*Id.* at 75, 90). Plaintiff's right hand was resting on the outside of the machine. (*Id.* at 94). Plaintiff contends that the grout pump suddenly pulled his work glove and his right hand into the machine through the inlet opening, severing three of his fingers. (*Id.* at 94-95).

Plaintiff contends that the grout pump was negligently designed because it was not equipped with an automatic interlock device, which would prevent the pump from operating while moving parts were exposed. (Josephs Dep. at 79-80).

## II.   Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record

that establish the absence of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53.  It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts."  *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment.  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.  Applicable Law and Analysis

### A.  Rebuttable Presumption Pursuant to MICH. COMP. LAWS ANN. § 600.2946

Defendant contends that the grout pump's design met all government and industry standards, requiring judgment as a matter of law on Plaintiff's product liability action pursuant to MICH. COMP. LAWS ANN. § 600.2946(4), which provides, in pertinent part:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm was in compliance with the standards relevant to the event causing the death or injury set forth in a federal or state statute or was approved by, or was in compliance with regulations or standards relevant to the event causing the death or injury promulgated by, a federal or state agency responsible for reviewing the safety of the product. . . .

In support of its argument, Defendant offers the following testimony from Dr. Josephs:

4

Q. Are you providing any opinions that the Schwing America design violated any governmental standards?

A. Not at this point in time.

Q. How about same question regarding industry standards?

A. No, not at this point in time.

(Josephs Dep. at 96).

However, the fact that Plaintiff's expert does not have an opinion as to whether Defendant's grout pump violates government and industry standards is not indicative of whether Defendant has established the rebuttable presumption. In its Motion, Defendant fails to set forth the applicable government and industry standards. Thus, Defendant's Motion in Limine Pursuant to MICH. COMP. LAWS ANN. § 600.2946 is denied.

**B. Plaintiff's Expert Harold Josephs**

Defendant contends that Dr. Josephs is not qualified to offer expert testimony on grout pumps or their safety features. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A preliminary question under Rule 702 is whether the proffered expert possesses sufficient qualifications to assist the trier of fact to understand the evidence or to determine a fact in issue. This requirement is met where the witness's qualifications provide a

5

foundation for the witness to answer a specific question. *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994).

Dr. Josephs is a registered professional engineer in the State of Michigan. He has a B.S. in Mechanical Engineering, a Masters in Mechanical Engineering, and a Ph.D. in Engineering and Ergonomics. (Josephs Dep. at 10). He is a professor at the Lawrence Institute of Technology Mechanical Engineering Department, where he taught safety engineering. (*Id.* at 11, 95). In addition, Josephs is a certified safety professional. (*Id.* at 95). He has written a number of papers and holds several patents in the area of safety. (*Id.* at 104).

Prior to teaching, Dr. Josephs worked for a number of manufacturers, including Ford Motor Company and General Electric. (*Id.* at 16). He has experience both designing equipment and reviewing equipment designs from a safety engineering perspective. (*Id.* at 106).

In this case, Plaintiff contends that Defendant should have installed an interlock safety switch on the grout pump to prevent it from operating while the covers were opened. Dr. Josephs' testimony could help a jury better-understand this issue. Moreover, Dr. Josephs' need not have specific experience with grout pumps and their safety devices to qualify as an expert witness, although this Court believes that he does have some expertise in the area of machine design and safety. *See, e.g.*, *Berry*, 25 F.3d at 1350 (explaining how an aeronautical engineer might be helpful to explain to a jury how a bumblebee is able to fly since the engineer could apply general flight principles to the case, even if he had never seen a bumblebee). At this time, in light of Dr. Josephs' experience and qualifications listed above,

6

the Court believes that he is qualified to offer expert testimony on grout pumps and their safety features.

Second, Defendant argues that Josephs' testimony is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). In *Daubert*, the Supreme Court noted that the evidence parties seek to admit must be "not only relevant, but reliable." *Id.* at 589, 113 S. Ct. at 2795. The Court identified the following factors to weigh in determining whether expert testimony should be admitted: (1) whether the scientific knowledge can be tested; (2) whether the theory or technique is subject to peer review; (3) whether there is a known or potential rate of error; and (4) whether it is generally accepted in the scientific community. *Id.* at 593-94, 113 S. Ct. at 2796-97. These factors are not meant to be an exhaustive list. *See id.* at 593, 113 S. Ct. at 2796.

Defendant contends that Dr. Josephs' theories in this case have not been corroborated by any peer review, scientific testing, or any other relevant expert community. However, as Dr. Josephs explained in his deposition although he did not design an alternative interlock system for the pump, they readily exist and can easily be added to a machine. (*See* Josephs Dep. at 79-81). Therefore, Defendant's Motion to Exclude Plaintiff's Expert Harold Josephs is denied.

### C. **Misuse**

Defendant contends that Plaintiff's misuse of the grout pump caused his injury and that Plaintiff's claim should be completely barred pursuant to MICH. COMP. LAWS ANN. § 600.2947(2), which provides:

A manufacturer or seller is not liable in a product liability action for harm caused

7

by misuse of a product unless the misuse was reasonably foreseeable. Whether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court.

MICH. COMP. LAWS ANN. § 600.2947(2).

Misuse is defined as:

(e)     "Misuse" means use of a product in a materially different manner than the product's intended use. Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.

MICH. COMP. LAWS ANN. § 600.2945.

The parties agree that Plaintiff's hand entered the inlet opening and was injured in the inlet poppet valve area. The inlet poppet valve is located approximately twelve inches from the outer rim of the inlet opening. The parties disagree, however, as to how Plaintiff's hand entered the inlet poppet valve area. Defendant contends that Plaintiff misused the pump by reaching his hand deep into the poppet valve area. According to Plaintiff's testimony, however, he was resting his hand on the machine near the inlet opening while he looked for a way to turn it off when his hand was sucked into the machine. (Cobbs Dep. at 90, 94).

There is nothing in the record to support Plaintiff's testimony that the suction at the inlet opening was strong enough to pull his hand twelve inches into the machine. Plaintiff's supervisor, Niall Heally, testified that even with the power on and the hoses removed, there was not enough suction to suck a hand into the inlet area. (Heally Dep. at

8

68-69).  According to Robert Edwards, Schwing's Product Safety Manager, the suction

force was less than 10 psi, or "roughly akin to the air you would feel if you opened a

door."  (Edwards Dep. at 63-64).  Furthermore, Defendant's expert, William Daly,

testified that the machine could not have sucked Plaintiff's hand.  (Daly Dep. at 64-65).

Finally, Plaintiff's expert, Dr. Josephs testified as follows:

> Q.    Was there any PSI during the maintenance process or cleaning when you
> have the hoses disconnected . . . is there going to be any PSI?
>
> * * *
>
> A.     With respect to the inlet and outlet, of course there's a hydraulically
> operated pump and there are pressure lines coming off the hydraulic pump and
> the pressure lines to operate the pistons and poppet valves and there is pressure
> in the system to make it work.  With respect to the inlet and outlet aspect of the
> pump, the typical pressure of the semi-liquid of slurry that you have going in and
> coming out or the semi-solid coming out and the slurry going in is not there.
>
> Because of the nature and the size of the pistons and from the information that
> I read there is a degree of suction felt like a fan, you can feel things moving in
> and out, so there will be some PSI . . . .
>
> Q.    Going back to what you mentioned, if the pump is still in operation, the
> pistons are moving back and forth, but there's no grout material being forced into
> the pump, you have the outlet open, there's no hoses on the end and the valve's
> going back and forth, would it be like a fan you say, the wind coming and going?
>
> A.    You would feel some motion because the pistons are relatively large size
> and they would be moving, displacing some air.
>
> Q.    Would there be any way for that displacement to suck in somebody's hand
> into the grout pump?
>
> A.     I don't believe so.  It might be sufficient let's say if you were wearing a
> glove as he was in this instance as a matter of fact.  If there was a piece of the
> thread in the glove that was out, it might grab a thread of the glove or a piece of
> the glove unbeknownst to the operator.  But to pull a solid piece of hand, I don't
> believe so.

9

(Josephs Dep. at 57-59).

Thus, Dr. Josephs's only theory as to how Plaintiff's hand could have been "sucked in" was that the machine caught a thread or piece of Plaintiff's glove and pulled his hand in. However, Plaintiff testified that he was wearing *rubber* gloves. (Cobbs Dep. at 96). Thus, the only feasible explanation which remains as to how Plaintiff's hand entered the inlet area is that he reached his hand twelve inches past the opening's rim, into the poppet valve area. Therefore, by placing his hand into the machine while it was operating, the Court is satisfied that Plaintiff misused the grout pump. In addition, the Court is satisfied that it was not foreseeable that someone cleaning the pump would reach his or her hand into the poppet valve area while it was operating. Consequently, Defendant's Motion for Summary Judgment Regarding Misuse is granted.

### E. **Plaintiff's Design Defect Claim**

Even assuming *arguendo* that Plaintiff had not misused the machine, or that Plaintiff could establish that such misuse was foreseeable, Plaintiff is unable to establish the six elements of the Michigan risk/utility test. Plaintiff must prove the following six elements to establish a prima facie case of design defect:

    (1)    that the severity of the injury was foreseeable by the manufacturer;

    (2)    that the likelihood of occurrence of the injury was foreseeable by the manufacturer at the time of distribution of the product;

    (3)    that there was a reasonable design alternative available;

    (4)    that the available alternative design was practicable;

    (5)    that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's

product; and

(6)     that omission of the available and practicable reasonable alternative
        design rendered the defendant's product not reasonably safe.

*Hollister v. Dayton-Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000) (deriving these

elements from *Prentis v. Yale Mfg. Corp.*, 421 Mich. 670, 365 N.W.2d 176 (1984),

*Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982), and *Reeves v.*

*Cincinnati*, Inc., 176 Mich. 181, 439 N.W.2d 326 (1989)).

        In this case, Plaintiff has clearly failed to establish the fifth element.  According to

Dr. Josephs, if Defendant's grout pump had an automatic interlock, Plaintiff's injury

would not have occurred.  (Josephs' Expert Report at 3).   Although Dr. Josephs, testified

that the grout pump should have included an automatic interlock device that would

prevent it from operating while the inlet or outlet covers were opened and moving parts

were "exposed," (Josephs Dep. at 79-80, 91-92; Josephs' Expert Report at 2), this would

not have prevented Plaintiff's injury.  Here, Plaintiff reached his hand into the machine

through the inlet opening, twelve inches into the machine, while it was operating.  Even if

the machine had contained an interlock device, because both the inlet and outlet covers

were closed when Plaintiff reached his hand into the machine, the interlock device would

not have turned the machine off.  Therefore, Plaintiff cannot show that the interlock

device would have reduced the foreseeable risk of harm posed by the grout pump.

Consequently, Defendant's Motion for Summary Judgment on Plaintiff's Design Defect

Claim is granted.  Because the Court believes that Plaintiff's Complaint should be

dismissed based on misuse and failure to establish design defect, the Court need not

11

address Defendant's Motion for Summary Judgment that Plaintiff is Unable to Establish Proximate Cause.

Accordingly,

**IT IS ORDERED** that Defendant's Motion in Limine Pursuant to MICH. COMP. LAWS ANN. § 600.2946 is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Dr. Josephs is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.


s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
John C. Stevenson, Esq.
Milton S. Karfis, Esq.